UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Will W.,<br>                    Plaintiff(s),<br>vs.<br><br>Martin O'Malley, Commissioner of Social Security,<br>                    Defendant(s). | 2:24-cv-00793-MDC<br><br>**ORDER REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

      Pro se plaintiff Will W. filed a *Motion for Remand* ("Motion") regarding the Administrative Law Judge's ("ALJ") final decision denying his social security benefits. *ECF No. 11*. The Court the GRANTS Motion.

**I.  BACKGROUND**

      Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on May 27, 2021 alleging disability commencing November 28, 2020. *AR 958–73*. The Commissioner denied the claims by initial determination on February 14, 2022. *AR 818–37*. Plaintiff requested reconsideration of the initial determination on February 16, 2022. *AR 844–43*. The Commissioner denied reconsideration on August 1, 2022. *AR 847–62*. Plaintiff requested a de novo hearing before an Administrative Law Judge on August 29, 2022. *AR 864–65*. The ALJ conducted a hearing on May 25, 2023. *AR 722–44*. The ALJ published an unfavorable decision on July 12, 2023. *AR 8–32*. Plaintiff requested that the Appeals Council review the ALJ's decision on August 21, 2023. *AR 951–53*. The Appeals Council denied the request for review on March 11, 2024. *AR 1–7*. On that date, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). The Court has jurisdiction to review the final decision of the Commissioner for substantial evidence and error of law. 42 U.S.C. §§ 405(g); 1383(c).

      The ALJ calculated that plaintiff met the special earnings requirements for a period of disability

and disability insurance benefits through June 30, 2022. *AR 14, ¶ 1*. The ALJ used the five-step sequential evaluation process to guide the decision. 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ agreed that plaintiff did not engage in substantial gainful activity since November 28, 2020. *AR 14, ¶ 2*. At step two, the ALJ found that plaintiff suffered from medically determinable severe impairments consisting of the following:

> degenerative disc disease of the cervical spine with cervical discogenic pain syndrome/cervical facet joint syndrome; degenerative disc disease of the thoracic spine; degenerative disc disease of the lumbar spine, with post laminectomy syndrome/discogenic syndrome, status post lumbar TLIF L4-S1 in August 2021; bilateral carpal tunnel syndrome; non-localizing vestibulopathy; and, major depressive disorder/anxiety disorder/adjustment disorder with mixed anxiety and depressed mood (20 CFR 404.1520(c) and 416.920(c)).

*AR 14, ¶ 3*. At step three, the ALJ decided that the impairments did not meet or equal any "listed" impairment. *AR 15, ¶ 4* (citing 20 C.F.R., Part 404, Subpart P, Appendix 1). The ALJ assessed plaintiff as retaining the residual functional capacity to perform the demands of light work, as defined citing 20 C.F.R. §§ 404.1567(c) and 416.967(c), but with the following additional limitations:

> Specifically, the claimant can: lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday and sit for six hours in an eight-hour workday with the ability to alternate between sitting and standing within normal breaks (defined as a morning break, a lunch period and an afternoon break at approximately 2-hour intervals); reach overhead, to the front and laterally frequently; finger and handle bilaterally frequently; occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasionally be exposed to dust, fumes, gases, smoke and poor ventilation but must avoid all exposure to temperature extremes, vibration and to hazards such as work at heights and dangerous moving machinery. Despite mental impairment, the claimant can understand, carry out and remember simple work instructions, use judgment to make simple work-related decisions, accept supervision

and interact with coworkers and members of the general public, adapt
to change in a routine work setting and maintain concentration,
persistence and pace over a two-hour period, an eight-hour workday
and a forty-hour workweek, to perform simple work tasks.

*AR 17, ¶ 5.*

At step four, the ALJ compared the residual functional capacity assessed to the demands of plaintiff's past relevant work and decided that plaintiff could not perform that kind of work. *AR 22, ¶ 6.* The ALJ classified plaintiff as a younger individual on the alleged onset date. *AR 22, ¶ 7.* The ALJ categorized plaintiff as possessing at least a high school education. *AR 22, ¶ 8.* The ALJ treated the question of transferability of skills as immaterial. *AR 22, ¶ 9.* At step five, the ALJ adduced and accepted testimony of a vocational expert that an individual of plaintiff's age, education, work experience, and residual functional capacity could perform the following occupations: router (DOT 222.587-038), with 25,000 jobs; order caller (DOT 209.587-034), with 11,000 jobs; and marker (DOT 209.587- 034), with 137,000 jobs. *AR 22, ¶ 10.* The ALJ concluded that plaintiff did not suffer from a disability between November 28, 2020, and the date of the decision. *AR 24, ¶ 11.*

The plaintiff argues in his brief that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's testimony concerning his pain, symptoms, and level of limitation. *ECF No. 11 at 6.* The Commissioner argues in opposition that the ALJ reasonably evaluated the subjective symptom testimony. *ECF No. 14 at 4.*

## II. DISCUSSION

### A. Legal Standard

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social security plaintiffs have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). Plaintiff bears the burden of showing any error was prejudicial. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The substantial evidence threshold

"is not high" and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 103, 108 (2019).

The ALJ must engage in a two-step analysis before rejecting a claimant's testimony concerning pain, symptoms, and level of limitation. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ must determine whether the claimant presented objective medical evidence of an underlying impairment, "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). The claimant "need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If the claimant meets this first test, then an ALJ may not reject subjective complaints solely based on a lack of medical evidence to fully corroborate the alleged severity of symptoms. *Burch v. Barnhart*, 400 F. 3d 676, 680 (9th Cir. 2005).

Once the first test is satisfied, and there is no evidence of malingering, the ALJ can only reject a claimant's testimony regarding the severity of symptoms by articulating "specific, clear and convincing reasons" supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). "[The clear and convincing standard] is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec.* Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

To reject a claimant's testimony, the ALJ must point to specific facts in the record that demonstrate the individual's symptoms are less severe than alleged. *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009). The ALJ must specify which pain testimony he found not credible and must explain what evidence undermines that testimony. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ must make more than a

general finding to discount subjective pain and limitation testimony. *Id.*

## B. Analysis

The plaintiff maintains that the ALJ improperly rejected plaintiff's testimony concerning his pain, symptoms, and level of limitation stemming from his physical impairments that the ALJ found severe. *ECF No. 11 at 5-6.* The ALJ found that plaintiff suffered from severe physical and mental impairments including degenerative disc disease of the cervical spine with cervical discogenic pain syndrome, degenerative disc disease of the lumbar spine with post laminectomy syndrome/discogenic syndrome, status post lumbar TLIF L4-S1 in August 2021, and bilateral carpal tunnel syndrome. *AR 14, ¶ 3.* The ALJ found that plaintiff could perform a restricted range of light work. *AR 17, ¶ 5.* Plaintiff had lumbar surgery. *AR 726.* The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, so the first step is satisfied. *AR 18*, see also supra *Lingenfelter* at 1035-36.

Regarding the second step, the ALJ did not allege malingering, so the clear and convincing standard applies. *AR 11–24*, see also supra, *Garrison* 759 at 1014–15. The ALJ acknowledged plaintiff's testimony about (1) his back pain being worse after surgery, (2) that his legs would lock up, (3) that he could stand and/or walk for 15 minutes, (4) that he spent most time reclining in a chair due to pain, (5) that his girlfriend assisted him with meal preparation and chores, (6) that he drove to medical appointments but had difficulty turning his neck, and (7) that he had ongoing depression and anxiety. *AR 18.* After reciting his testimony and allegations, the ALJ found that plaintiff's impairments could reasonably cause the alleged symptoms but that his statements concerning the severity of his symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The Court reviewed the ALJ's summary of plaintiff's testimony and general conclusion that his symptoms were not entirely consistent with medical evidence and other evidence of record. *Id.* The ALJ,

however, did not articulate "specific, clear and convincing reasons" supported by substantial evidence for rejecting plaintiff's testimony as not credible. *See Garrison*, 759 F.3d at 1014–15.  Instead, the ALJ mostly recited medical evidence, which does not qualify as a clear and convincing reason to reject subjective testimony. *Brown-Hunter*, 806 F.3d at 489 (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination[.]").  More problematic is that the ALJ also made seemingly contradictory findings: on the one hand, finding significant improvement after the surgery, but on the other hand, concluding that plaintiff suffers from post laminectomy syndrome after the spinal surgery. *AR 14, ¶ 3, see also AR 1461*.

       The ALJ generally concluded that plaintiff's statements about the severity of his symptoms were inconsistent with medical evidence because some of the medical evidence shows that his impairments were, at times, "generally stable and had symptom improvement." *See AR 18-21*. At the same time, however, ALJ also acknowledged that plaintiff's medical records demonstrate shifting levels of pain, limitations, and severity of symptoms, at times meaningfully increasing. *See AR 19*-21.  For example, the ALJ notes that August 2021 imaging showed stability compared to a March 11, 2021 study. *AR 19*. The ALJ, however, then finds that plaintiff's subsequent April 2022 medical records reveal on going neck and low back pain, decreased sensation to C7, lumbar spine tenderness, and decreased range of motion. *Id*.  Similarly, while the ALJ notes that plaintiff reported "significant improvements in his symptoms in May 2022, he also notes that in June 2022, plaintiff's records showed severe degenerative changes resulting in spinal canal narrowing. *Id.*

       The ALJ reviewed plaintiff's pain management records from 2022 through 2023, after his initial report of improvement after the surgery. *AR 32, 1472, and 2541–93*. Those records show the plaintiff continued to report severe radiating low back pain and underwent multiple pain management treatments through 2023. *AR 2541–56 and 2558–86*.

It is not clear from the ALJ's decision regarding whether any significant improvement was sustained into 2023 as he did not specify which pain testimony, during which period, he found to be not credible. For example, if plaintiff experienced significant improvement, it is not clear from the ALJ's decision whether he considered the two periods separately or if plaintiff's pre lumbar surgery condition was significantly worse than his post lumbar surgery. See *Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021) (finding that an ALJ erred in disregarding all of the claimant's testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only applicable to the late-period testimony). While the ALJ "need not discuss all evidence presented…[he] must explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). An ALJ's silent disregard of evidence provides the court "nothing to review to determine whether the error materially impacted the ALJ's ultimate decision" and therefore, whether the error was harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

While the ALJ cannot summarize the entire record, the Court also notes that the ALJ did not acknowledge evidence that could have undermined some of his findings, such as the recommended lumbar epidural steroid injections or the change and adjustment in prescribed medication regarding his findings of general stability and symptom improvement. AR 11–24, see also *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); (requiring that the Commissioner review the record as a whole and "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."), see also *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for ALJ to ignore competent evidence that suggests an opposite result in order to justify her conclusion). The ALJ is responsible for resolving conflicts in medical evidence. *Garrison*, 759 F.3d at 1010.

The ALJ's reliance on the May 2022 treatment note, to conclude that plaintiff improved post-surgery does not resolve the conflict with the pain management treatment notes indicating the opposite, especially considering the lumbar examinations conducted after by pain management a few weeks later

in May 2022, and in February 2023, that the ALJ did not analyze. *AR 19, 2555, 2589*. Moreover, while the ALJ states that May 2022 records show plaintiff showed significant improvement in his symptoms, his next finding states that plaintiff's June 2022 records show various and significant downturns in plaintiff's health, including narrowing and compression of plaintiff's spinal nerves. *AR 19*. On this record, the ALJ did not present clear and convincing reasons to discount plaintiff's testimony regarding these two periods and whether the plaintiff experienced sustained improvement because of his lumbar surgery.

In addition to back pain, the ALJ explained that plaintiff was in a car accident in August 2021 in which he reported neck pain that "became significantly more severe after the accident with radiation down to his arm." *AR 19*. Pain management treatment notes from April 2022, and May 2022, document plaintiff describing axial neck pain radiating into the bilateral shoulders and arms, as chronic, constant, and severe. *AR 1723, 1815*. The doctor recommended cervical surgery. *AR 1853*. After December 2022, pain management recommended epidural steroid injections. *AR 2561, 2544, 2548, 2552, and 2556*. The ALJ did not analyze the impending cervical surgery and recommendation for cervical epidural steroid injections considering plaintiff's testimony about his neck pain. The ALJ erred by failing to acknowledge or weigh the evidence that detracted from his conclusion. *Reddick*, 157 F.3d at 720. The *Bunnell* standard requires consideration of "excess pain" or symptoms and not simply the degree of pain or symptom limitation established by the objective medical evidence. *Bunnell*, 947 F.2d at 345; see also *Burch*, 400 F.3d at 680 ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.").

In sum, the ALJ did not articulate clear and convincing reasons, supported by substantial evidence, for discounting or rejecting plaintiff's pain, symptom, and limitation testimony. The Court remands this case for further proceedings regarding the consideration of plaintiff's subjective testimony

and to articulate his reasons in weighing or rejecting evidence that appears supportive of plaintiff's testimony.

**IT IS ORDERED that:**

1. Plaintiff Will W.'s *Petition* (ECF No. 11) is GRANTED.
2. The Court REMANDS this case for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).
3. The Clerk of Court is DIRECTED to enter final judgment VACATING the decision of the Commissioner of Social Security and REMANDING this case for further proceedings consistent with this Order.

DATED July 3, 2025.

IT IS SO ORDERED.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge